735 P.2d 959

Lenora (Smith) TUCKER, heir and personal representative of Michael Wayne Smith, deceased; George McGinty and Debbie McGinty, individually and as a marital community, Plaintiffs,

v.

Michael John PALMER and Dianne M. Palmer, husband and wife, and Tracy Rodenbough, a single person, Defendants.

Tracy RODENBOUGH, Cross-Plaintiff,

v.

Michael John PALMER and Dianne M. Palmer, husband and wife, Cross-Defendents. (Two Cases)

Tracy RODENBOUGH, Third Party Plaintiff-Appellant,

v.

Terry HARRISON, Personal Representative of the Estate of Frederick Schmidt, deceased, Third Party Defendant-Respondent.

Lenora (Smith) TUCKER, heir and personal representative of Michael Wayne Smith, deceased; George McGinty and Debbie McGinty, individually and as a marital community, Plaintiffs-Respondents,

v.

Michael John PALMER and Dianne M. Palmer, husband and wife, Defendants,

and

Tracy Rodenbough, a single person, Defendant-Appellant.

Tracy RODENBOUGH, Third Party Plaintiff,

v.

Terry HARRISON, personal representative of the estate of Frederick Schmidt, deceased, Third Party Defendant.

Nos. 15507, 15677.

Supreme Court of Idaho.

Jan. 29, 1987.

Rehearing Denied April 24, 1987.

Charles W. Hosack, Coeur d'Alene, for appellant Rodenbough.

Nicholas M. Lamanna, Priest River, for respondent Estate of Schmidt.

Fred R. Palmer, Sandpoint, for respondents Tucker, et al.

SHEPARD, Chief Justice.

This case arises from an automobile accident in which the vehicle, driven by defendant Schmidt, struck the vehicle driven by defendant Rodenbough. Rodenbough was injured, and the three passengers in the Rodenbough automobile were injured or killed. Following the initial impact the Palmer car was also involved in the accident. Rodenbough and her passengers accepted settlement from Schmidt. The three passengers in the Rodenbough vehicle later filed suit against Rodenbough and Palmer, at which point Rodenbough filed a third-party complaint seeking contribution from Schmidt. This appeal results from an order granting Schmidt's motion for summary judgment against Rodenbough's claim for contribution, and denying Rodenbough's motion for summary judgment.

Rodenbough was driving a car westbound on Highway 2 in Bonner County, in which George McGinty, Debbie McGinty, and Michael Smith were passengers. Schmidt driving his car eastbound, crossed the center line, and struck the Rodenbough car. Palmer, who was following the Rodenbough car, was unable to stop and struck the Rodenbough car in the rear. In the accident Smith was killed, and the McGintys and Rodenbough suffered injuries. Schmidt suffered minor injuries.

Schmidt's insurance carrier reached an agreement with Tucker (personal representative of Smith), the McGintys, and Rodenbough to pay the policy limits of $50,-000.00. Each of those parties received a check for a proportionate part of the $50,-000.00, together with a covenant for their signature by which each agreed not to commence an action against Schmidt and to hold him harmless from any accident-related expenses. The covenants sent to each of those parties expressly reserved each party's cause of action against parties not named in the covenants. The McGintys and Tucker executed and returned the covenants in the form that they were submitted. Rodenbough accepted the check for her proportionate share of the $50,-000.00 but did not execute or return the covenant.

Thereafter the McGintys and Tucker filed an action against Rodenbough and the Palmers. Rodenbough filed an answer to that complaint and also filed a third-party complaint seeking contribution from Schmidt and naming him as a third-party defendant. Thereafter Rodenbough executed a form of covenant in favor of Schmidt, agreeing not to sue and to hold Schmidt harmless, acknowledging her receipt of $23,350.00 in August of 1980, but reserving the right to name Schmidt as a third-party defendant in order to recover contribution.

Since Schmidt had died on November 21, 1982, his estate moved for summary judgment on Rodenbough's claim for contribution, contending that when settlement payment was tendered to Rodenbough it was on the basis that the covenant would be executed by Rodenbough in the form submitted by the insurance carrier, and that Rodenbough's change in the language of the covenant was a breach of the settlement agreement. It was stated therein that the carrier intended the covenant to preclude any claim for contribution against Schmidt. That affidavit was not controverted. Rodenbough then filed her own motion for summary judgment, contending that if she could not maintain a cause of action against Schmidt for contribution, she was entitled to summary judgment on that part of the McGinty/Tucker claim which exceeded her proportionate fault.

As above stated, the district court granted summary judgment to Schmidt on Rodenbough's claim for contribution from Schmidt. As to Rodenbough's motion for

summary judgment, the trial court reserved a ruling thereon until such time as a jury verdict might be returned, reasoning that the Rodenbough summary judgment issue would not arise if a jury found Rodenbough to be not negligent. Rodenbough thereafter filed an appeal from the district court's order granting Schmidt's summary judgment on Rodenbough's contribution claim. The district court then ruled on Rodenbough's motion for summary judgment, denying the same and stating:

On any judgment rendered in favor of the Plaintiff's, Idaho Code 6-805 will be applied and such judgment will be reduced by the percentage of negligence attributable to the Plaintiff, if such negligence was not as great as the negligence of the Defendants, and secondly, by the consideration paid for the release given by Schmidt.

The resulting judgment may be inequitable to Rodenbough in the event the Plaintiffs recover a large verdict, without a finding of negligence on Plaintiffs' part and deducting only the lump sum paid by Schmidt. However, protection of such a happening is afforded in our statutes, I.C. 6-805 and 6-806 and said release could have provided for a reduction of the Plaintiffs judgment to the extent of the pro rata share of Schmidt's negligence. Such did not occur and the court cannot reform the agreement of the parties but may only follow the statute as written.

Rodenbough's appeal primarily focuses on asserted error by the trial court in granting Schmidt's motion for summary judgment denying Rodenbough's claim for contribution from Schmidt in the event that a jury should return a verdict finding her negligent. Rodenbough argues further that since she and Schmidt at most were joint tortfeasors, and since Schmidt is insulated by the court's ruling prohibiting contribution, she should not be required to stand alone to defend the action, and hence her motion for summary judgment against the action by the McGintys and Tucker should have been granted.

The trial court's initial ruling against Rodenbough's claim for contribution against Schmidt was based on its view that to allow Rodenbough to seek contribution from Schmidt would be to allow McGinty and Tucker to recover additional sums from Schmidt through the use of Rodenbough as a conduit and thus destroy the peace that Schmidt had obtained from McGinty and Tucker by way of settlement. However, it is clear that the trial court, at a later point, held that Rodenbough's action against Schmidt for contribution was barred by the terms of the covenant not to sue. In this regard, the trial court focused on the language of the covenants not to sue, which had been executed by McGintys and Tucker. Presumably the language of the covenant tendered to Rodenbough was identical to the language of the covenant tendered to and executed by Tucker and McGintys. We hold that the trial court was correct in granting summary judgment against Rodenbough on her claim for contribution against Schmidt.

We deem it clear that Rodenbough is bound by the terms of the covenant submitted by Schmidt for her execution. It is unquestioned that Schmidt's carrier tendered Rodenbough approximately $25,-000.00 in exchange for her execution of the covenant. It is undisputed that Rodenbough accepted the money. Only after the present action had been instituted against Rodenbough by McGintys and Tucker did Rodenbough then draft and execute a covenant which reserved her right to make claim against Schmidt for contribution. Equity and simple principles of contract will not permit such a result.

 The language employed by the original covenants provided that the parties would never "make any demand or claim, or cause or permit to be prosecuted any action at law or equity, or any proceeding of any kind" against Schmidt. We hold that language to be clear and unambiguous in releasing Schmidt from all claims, including contribution. Contribution was never considered to be an absolute right, and should be denied if it would be inequitable. Restatement (Second) of Torts 1977, Sec-

tion 886A, comment C. The amicable settlement of litigation is a desirable goal and agreements to settle litigation will be disregarded only for the strongest of reasons. *Lomas and Nettleton Co. v. Tiger Enterprises,* 99 Idaho 539, 585 P.2d 949 (1978). We note further that the language of the original covenants is general in nature. Whether such a general release bars a claim for contribution against the released tortfeasor (here Schmidt), is a case of first impression in Idaho. Among the states that have enacted the 1939 version of the Uniform Contribution Among Tortfeasors Act, and that have considered similar passenger actions involving releases, there appears to be a split of authority. Before the repeal of its Uniform Contribution Among Tortfeasors Act the Pennsylvania court held that contribution was not contemplated by the parties in the release given in a passenger action similar to the instant case, and hence the general language of the release did not absolve the released co-tortfeasor of his liability to make contribution. *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199 (1967). On the other hand, the courts of Arkansas, Delaware and Maryland have all held that language as in the covenants under consideration here which release one tortfeasor from all claims and liability, includes claims for contribution. *M.F.A. Mutual Insurance Company v. Mullin,* 156 F.Supp. 445 (W.D.Ark.1957) (applying Arkansas law); *Brown v. Eakin,* 11 Terry 574, 50 Del. 574, 137 A.2d 385 (1957); *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957). We find those decisions to be better reasoned, adopt their rationale, and hold that such general language in a covenant releasing one tortfeasor from all claims and liability includes a claim for contribution.

▪ Rodenbough also contends that the execution of the covenants not to sue Schmidt acted to relieve her of any liability to the McGintys and Tucker. Neither a covenant not to sue nor a release to one

tortfeasor can operate to discharge other tortfeasors from liability unless the agreement contains specific language to that effect. *Holve v. Draper,* 95 Idaho 193, 505 P.2d 1265 (1973). Here the language of the covenants executed by the McGintys and Tucker is specific in stating that no one other than Schmidt was contemplated as being insulated by the covenants. That language states:

> There is no intent on the part of the covenantor that this agreement should be construed as or result in a release of any liability of any other person, except Frederick E. Schmidt. Covenantor expressly reserves all rights of actions, claims and demands of any kind against any and all persons other than Frederick E. Schmidt.

We hold that language to be clear and unambiguous.

Rodenbough is thus in the circumstance of being jointly and severally liable with Schmidt, but with no right to recover contribution from Schmidt. This might seem an anomalous position, however it is the result required by Rodenbough's settlement with Schmidt, and required by Idaho's statutory scheme. Idaho has adopted the 1939 version of the Uniform Contribution Among Tortfeasors Act as promulgated by the National Conference of Commissioners on Uniform State Laws. I.C. §§ 6–805 and 6–806 conform to §§ 4 and 5 of the Act, with a sentence added to I.C. § 6–806 to conform with Idaho's comparative negligence scheme. Seven other states have adopted substantially the 1939 version of the Uniform Contribution Among Tortfeasors Act.[1]

Idaho Code § 6–805 is a verbatim enactment of § 4 of the 1939 Uniform Act governing the effect of a release or covenant not to sue on the non-released tortfeasor. Those jurisdictions having statutes identical to I.C. § 6–805 reach results substantially similar to our decision today, and universally hold that judgments against

---

1. The seven states are: Arkansas, Ark.Stat.Annot. §§ 1001–1005 (1947); Delaware, Del.Code Annot, tit. 10 §§ 6301–8 (1974); Hawaii, Hawaii Rev.Stat. §§ 663–11 to 17 (1976); Maryland, Md. Joint Obligations and Joint Tenancy Code Ann. §§ 16–24 (1957); New Mexico, N.M.Stat. Ann. §§ 41–3–1 to 7 (1978); Rhode Island, R.I. Gen.Laws §§ 10–6–1 to 11 (1956); South Dakota, S.D.Codified Laws Ann. §§ 15–8–11 to 22 (1984).

**652**

non-settling tortfeasors should be reduced by the amount paid by the settling tortfeasor for the release. *Woodard v. Holliday*, 235 Ark. 744, 361 S.W.2d 744 (1962); *Raughley v. Delaware Coach Co.*, 8 Terry 343, 47 Del. 343, 91 A.2d 245 (1952); *Maryland Lumber Co. v. White*, 205 Md. 180, 107 A.2d 73 (1954); *Augustine v. Langlais*, 121 R.I. 802, 402 A.2d 1187 (1979); *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956); *Degen v. Baymen*, 90 S.D. 400, 241 N.W.2d 703 (1976); *cf. Shantz v. Richview, Inc.*, 311 N.W.2d 155 (Minn.1980), holding that when the settling defendant is found to be non-negligent the judgment should not be reduced by the amount of the settlement.

We note that the somewhat anomalous result set forth above has prompted the National Conference of Commissioners on Uniform Laws to change § 5 of the 1939 Act. *See* comment § 4 Uniform Contribution Among Tortfeasors Act, Handbook of the National Conference of Commissioners on Uniform State Laws (1955). Nevertheless, Idaho continues in I.C. § 6–805 to maintain the language of the 1939 version of the Uniform Act, and hence we are persuaded by the construction of the 1939 version of the Uniform Act by the courts of Arkansas, Delaware and Maryland. *See M.F.A. Mutual Insurance Company v. Mullin, supra; Brown v. Eakin, supra;* and *Swigert v. Welk, supra.*

The orders of the trial court are affirmed and the cause is remanded for further proceedings in which the Rodenbough and Schmidt negligence, if any, will be determined. In the event judgment is ultimately entered against Rodenbough, it will be reduced in accord with I.C. § 6–805 by the consideration received by McGintys and Tucker for their covenants not to sue Schmidt.

Costs to respondent. No attorney fees on appeal.

DONALDSON, BAKES, BISTLINE and HUNTLEY, JJ. concur.