Helen **PETRONE** et al.

v.

The **TOWN OF FOSTER, R.I.** by and through its Treasurer et al.

No. 99–2–Appeal.

Supreme Court of Rhode Island.

April 13, 2001.

8. At the time of oral argument, the respondent had been released from prison and was living in Maine.

Paul L. Foster, Lincoln, for Plaintiff.

Michael DeSisto, Providence, Michael J. Farley, East Providence, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

After subdividing their property without planning-board approval, the plaintiffs, Helen Petrone, Christine Petrone, and the Estate of Benjamin Petrone, claimed that the defendants, the Town of Foster (town) and certain of its officials, unlawfully deprived them of their property rights and taxed them improperly. As a result, they filed suit against the town, by and through its treasurer, Carl Saccoccio—both individually and in his capacity as the town's building official—and against Pamela Fontaine, individually and in her capacity as tax collector.[1] The plaintiffs have appealed from the Superior Court's entry of summary judgment in favor of the defendants. A single justice of this Court directed both parties to show cause why the issues raised in this appeal should not be summarily decided. Because no cause has been shown, we proceed to resolve the appeal at this time.

In 1986, plaintiffs Helen Petrone and her late husband, Benjamin Petrone (the Petrones), bought a thirty-acre parcel of land in the town. Thereafter, in February 1987, they subdivided the property into ten lots by deed. After doing so, they recorded the deeds in the town's land-evidence records, and the town's tax assessor assessed them as ten separate lots. Nevertheless, the town took the position that plaintiffs' subdivision of their property vio-

---

1. By agreement, summary judgment also entered in favor of the defendants, William Hurley and Century 21 Samra–Sullivan Realtors. The plaintiffs, however, are not appealing from that judgment.

lated the town's planning-board ordinance because they had not obtained prior approval from the planning board to do so. Thereafter, plaintiffs contend, they were unable to sell the lots because the town refused to recognize them as ten separate buildable lots. Eventually, when plaintiffs failed to pay their taxes on these lots, the town sold them at a tax sale.

On July 5, 1996, plaintiffs sued, claiming that the "acts and omissions of the Town of Foster and Fontaine in assessing the property of Plaintiffs as ten (10) lots of land was unlawful and resulted in the plaintiffs paying the Town of Foster an excessive tax on the real estate." The plaintiffs also alleged that the town's actions deprived them of all economically beneficial use of their property in violation of the Takings Clause of both the United States and Rhode Island constitutions.

In due course, defendants filed a motion for summary judgment. They argued that plaintiffs' claim of excessive taxation was improper because plaintiffs had failed to comply with the statutory requirements of G.L.1956 § 44-5-26 to pursue such a claim. They also asserted that the town's refusal to recognize plaintiffs' property as ten separate buildable lots did not constitute a taking under either the United States or Rhode Island constitutions because plaintiffs had failed to exhaust any of their administrative remedies in addressing this situation. The defendants also contended that, even if there had been a taking, plaintiffs were barred from bringing suit because the matter was not timely filed pursuant to G.L.1956 § 9-1-25. After a hearing, the Superior Court granted their motion and entered a final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. In granting defendants' motion for summary judgment, the motion justice reasoned that plaintiffs' remedy, if any, was an adminis-

trative one. She did not address any of the substantive issues raised by the parties.

On appeal, plaintiffs assert that the motion justice erred in granting defendants' motion for summary judgment in the absence of any supporting evidence. They argue that genuine issues of fact existed that precluded the granting of a summary judgment motion. They contend that a material question of fact existed about when they were notified by the town that the ten subdivided lots were not buildable in accordance with the town's ordinance. They also assert that the town implicitly authorized and approved the subdivision when the town clerk accepted the deeds for recording and when the town thereafter taxed the subdivided lots on an individual basis.

### Standard of Review

"In reviewing a summary judgment, this [C]ourt is bound to employ the same standard used by the trial justice." *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 631 (R.I.1998). The trial justice "must refrain from weighing the evidence or passing upon issues of credibility." *Doe v. Gelineau*, 732 A.2d 43, 48 (R.I.1999). "[S]ummary judgment is a harsh remedy that must be applied cautiously." *DePasquale v. Venus Pizza, Inc.*, 727 A.2d 683, 685 (R.I.1999) (per curiam). It may only be granted when there are no issues of material fact in dispute, with all reasonable inferences drawn in favor of the nonmoving party, and when the moving party is entitled to prevail as a matter of law. *See Gelineau*, 732 A.2d at 48; *Superior Boiler Works, Inc.*, 711 A.2d at 631-32. The movant bears the burden of demonstrating the absence of facts in dispute, and if the movant satisfies this burden, the nonmovant must adduce evidence showing a disputed issue of material fact. *See id.* "However, the opposing

part[y] will not be allowed to rely upon mere allegations or denials in [his or her] pleadings. Rather, by affidavits or otherwise [he or she has] an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998).

## Analysis

■ In this case, it is undisputed that plaintiffs did not seek approval from the planning board before unilaterally subdividing their property. General Laws 1956 § 45–23–27(b) provides:

"(1) All activity defined as subdivision requires a new plat, drawn to the specifications of the local regulations, and reviewed and approved by the planning board or its agents as provided in this chapter; and

"(2) Prior to recording, the approved plat shall be submitted for signature and recording as specified in § 45–23–64."

Section 45–23–64 provides that no plan or plat for a subdivision shall be recorded unless it has been approved by the planning board. Specifically, § 45–23–64 provides in pertinent part as follows:

"(a) All approved final plans and plats for land development and subdivision projects are signed by the appropriate planning board official with the date of approval.

"(b) Upon signature, all plans and plats are submitted to the administrative officer prior to recording and filing in the appropriate municipal departments. The material to be recorded for all plans and plats include all pertinent plans with notes thereon concerning all the essential aspects of the approved project design, the implementation schedule, special conditions placed on the development by the municipality, permits and agreements with state and federal reviewing agencies, and other information required by the planning board."

In accordance with § 45–23–27(b)(1), the Foster Planning Board ordinance provides that:

"The Building Inspector of the Town of Foster shall not authorize construction of any building where land has been divided in any manner unless a registered survey of the land so divided has been approved by the Foster Planning Board and is recorded with the Town Clerk of the Town of Foster." Foster Planning Board Ordinance, Section V, Art. A–1.

Article A–2 provides that "[t]he Town Clerk of the Town of Foster shall not accept for recording any deed which conveys less than the entire tract of contiguous land owned by the grantor * * * unless the requirements of Article A.1 'Surveys' of this Ordinance have been complied with."

These two planning-board ordinances required prior approval by the planning board before any plat of land could be subdivided and accepted for recording by the town clerk. This accords with §§ 45–23–27(b) and 45–23–64, which also require that a lawfully recorded subdivision must obtain prior approval by the planning board. Therefore, the town clerk should not have accepted these deeds for recording because they purported to convey less than the entire tract of contiguous land owned by the grantor without prior approval of the planning board.

Moreover, plaintiffs were not entitled to rely on the fact that the town accepted these deeds for recording and then separately taxed the lots in support of their assertion that they have lawfully subdivided their property. In *Smith v. Zoning Board of Review of Westerly*, 111 R.I. 359,

368, 302 A.2d 776, 781 (1973), this Court held that the fact that lots have been assessed and taxed separately is not conclusive in determining the legality of a subdivision. Furthermore, as our preceding discussion makes plain, the *ultra vires* action of the town clerk in recording the deeds did not bind the municipality and could not have been justifiably relied upon by the plaintiffs. *See Romano v. Retirement Board of the Employees' Retirement System of the State of Rhode Island,* 767 A.2d 35, 38 (R.I.2001); *Casa DiMario, Inc. v. Richardson,* 763 A.2d 607, 610–11 (R.I. 2000).

■ The plaintiffs also assert that they have been denied all beneficial use of the ten lots through defendants' refusal to recognize that the lots have been legally subdivided. They argue that defendants have applied a regulatory policy that has prevented them from enjoying the beneficial use of their land. But their taking claim must fail. The plaintiffs did not seek approval from the planning board before subdividing their land. The requirement that they do so was lawful and one that was enacted pursuant to due process of law. The town's denial of authorization to construct buildings on land that has not been approved for subdivision has not prevented plaintiffs from all beneficial use of their land. Until they have exhausted their administrative remedies in seeking approval of their proposed use of the land, any takings claim remains premature at best.

This case presents a similar situation to the one we faced in *Mall at Coventry Joint Venture v. McLeod,* 721 A.2d 865 (R.I. 1998). There, the plaintiff (Mall Venture) sued the Department of Environmental Management (DEM) seeking declaratory relief and monetary damages for lost opportunities, costs, and profits after DEM had refused to proceed according to its preliminary determination of wetland boundaries. *Id.* at 867. Mall Venture had failed to follow through with DEM's formal application process. *Id.* at 868. Following a jury trial, the trial justice granted DEM's motion for judgment as a matter of law. *Id.* The trial justice found that Mall Venture had failed to make the necessary changes to its application that DEM had requested and that it also had failed to complete the formal application and then submit it to DEM for approval. *Id.* The trial justice stated, however, that because DEM had failed to raise the defense that the plaintiff had not exhausted its administrative remedies, he was constrained to address the merits of the plaintiff's claim. *Id.* at 870. But in doing so, he concluded that DEM had not violated any duty to the plaintiff in its preliminary determination concerning the identification of wetlands. *Id.* at 868.

On appeal, this Court ruled that the trial justice was correct in determining that DEM had not violated any duty it owed to the Mall Venture. *Id.* at 872. We also noted that, pursuant to the Administrative Procedures Act, judicial review is available to any person who has exhausted all available administrative remedies:

"[A]n applicant for alteration of wetlands is not free to choose to ignore this proceeding and seek judicial relief by a separate action either for injunctive relief or for damages. If an applicant pursues this route, then the applicant will be faced with the doctrine of quasi-judicial administrative immunity that will serve as a bar to seeking relief outside the method provided by the Legislature." *Id.* at 871.

Just as the plaintiff in *Mall at Coventry Joint Venture* needed to exhaust its administrative remedies pursuant to the Administrative Procedures Act, the plaintiffs in this case also needed to exhaust their administrative remedies pursuant to chap-

ter 23 of title 45 by seeking approval of any proposed subdivision from the planning board of the Town of Foster. Because they have not done so, their complaint was unripe as a matter of law.

Based upon the foregoing, we conclude that the trial justice properly granted summary judgment. Thus, we deny the plaintiffs' appeal, affirm the summary judgment in favor of the defendants, and remand the papers of the case to the Superior Court.